UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION - BAY CITY


IN RE:

    CRAIG W. MAIKE,                                Case No. 15-20218-dob
           Debtor.                                    Chapter 13 Proceeding
                                                                              Hon. Daniel S. Opperman

_____/


OPINION REGARDING
<u>UNITED FINANCIAL CREDIT UNION'S MOTION TO COMPEL PAYMENTS AND
OBJECTIONS TO CHAPTER 13 PLAN</u>


Introduction and Facts

Craig Maike filed his Chapter 13 Petition and Plan with this Court on February 10, 2015. The Chapter 13 Plan has a 60-month term with plan payments of $660.00 per month. In addition to these monthly payments, the Debtor proposes to pay certain federal and state tax refunds in excess of $1,620.00, the annualized amount reported on Line 8h of his Schedule I ($135.00 x 12).

As for his creditors, the Debtor's attorney fees and costs totaling $2,910.00 are to be paid as an administrative claim classified as a Class Two claim. United Financial Credit Union, which holds a mortgage on the Debtor's personal residence at 117 5th Street, Oakley, Michigan, is listed as a Class Four creditor. Per the Debtor's Chapter 13 Plan, the regular monthly payment of $510.00 is to be paid by the Trustee and the arrears on the note to United Financial Credit Union in the amount of $3,880.00 is to be paid at $68.00 per month for 60 months. Also per the Debtor's Chapter 13 Plan, Attachment 2 estimates two pre-confirmation payments of $660.00 per month totaling

1

$1,320.00 and 60 post-confirmation payments of $660.00 per month totaling $39,600.00. After deduction for certain Trustee and attorney fees, as well as payments to cure the arrears and regular monthly payments owed to United Financial Credit Union, the Debtor proposed to pay $1,970.00 to his unsecured creditors. The only unsecured claim filed to date in this case is in the amount of $1,350.52 to Consumers Energy Company, therefore resulting in a 100% payment to unsecured creditors if the Debtor's Chapter 13 Plan is confirmed and followed.

The proof of claim filed by United Financial Credit Union suggests that this should be a successful Chapter 13 Plan. First, the proof of claim indicates that the monthly payment owed to United Financial Credit Union is $503.18, not $510.00 as stated in the Chapter 13 Plan. Likewise, the arrearage owed by the Debtor to United Financial Credit Union, per the proof of claim, is $2,515.90, which is less than the $3,880.00 stated by the Debtor in his Chapter 13 Plan. Accordingly, instead of 60 months to cure this arrearage, the $2,515.90 should be cured within 37 months if the Debtor's proposed Chapter 13 Plan of $68.00 per month for the arrears is accepted. ($2,515.90 ÷ $68.00 = 36.99).

On April 14, 2015, United Financial Credit Union filed an Objection to Confirmation of the Debtor's Chapter 13 Plan. This Objection states, in relevant part:

2. That 11 USC § 1322(b)(5) required that mortgages on which the last payment is due after the last payment due under the plan be paid with their regular monthly payment during the pendency of the chapter 13 case.
3. That the Debtor has proposed a plan which may not allow the payment of the Credit Union's mortgage over the pendency of the plan as it appears that attorney fees would be paid prior to the mortgage payments.
4. That the plan can therefore not be confirmed.
5. That the Chapter 13 Plan has not been proposed in good faith.

The Court held a hearing regarding confirmation of the Debtor's Chapter 13 Plan on April 23, 2015. At this hearing, United Financial Credit Union argued that Debtor's attorney would be

2

paid before it because on that date the Debtor had only paid $1,320.00 ($660.00 x 2) and that the effect of confirmation would be to take the majority of this money, less the Trustee fee, and then pay the Debtor's attorney, with no money paid to United Financial Credit Union.  After hearing this argument, the Court inquired of the Trustee as to the date when he expected that there would be sufficient monies on hand to pay the Debtor's attorney and make a payment to United Financial Credit Union.  The Chapter 13 Trustee calculated that date would be in July 2015, so the Court adjourned confirmation to July 23, 2015.

Approximately one month later, on May 22, 2015, United Financial Credit Union filed a Motion to Compel Payments.  Per the calculations of United Financial Credit Union, it will take years before the Trustee can accumulate enough money to pay the Debtor's attorney in full and pay United Financial Credit Union all of its accumulated post-petition monthly payments.  Accordingly, United Financial Credit Union requested that the Court order the Trustee to pay $503.18 per month.  The Debtor responded to the Motion to Compel Payments of United Financial Credit Union, and the Court held a hearing regarding this Motion on July 9, 2015.  At the July 9, 2015, hearing, the Debtor's attorney advised the Court that his client had offered to make adequate protection payments to United Financial Credit Union as early as April 2015, but this offer was rejected.  Since the confirmation hearing was previously adjourned to July 23, 2015, the Court adjourned the hearing on the Motion to Compel Payments to correspond with the confirmation hearing.  Regrettably, the July 23, 2015, confirmation hearing had to be adjourned to August 20, 2015, given the death of a close friend of the Debtor's attorney and his request to attend the funeral.

At the August 20, 2015, hearing, the Trustee reported that after payment of his trustee fee, he had $3,144.90 available to disburse.  Per the terms of the Plan, $2,910.00 would be paid to

3

Debtor's counsel, and the remainder, $234.90, paid to United Financial Credit Union. This payment would be made on the first week of September. Thereafter, per the Trustee, of the $660.00 received from the Debtor, the trustee fee is deducted (approximately $30.00), with the remainder paid to United Financial Credit Union, first to the regular monthly payment of $503.18, and then to the post-petition defaulted amount, which the Court calculates to be $126.82 ($630.00 - $503.18 = $126.82). As United Financial Credit Union is contractually due to be paid on the second day of each month, as of September 3, 2015, the Debtor was in default for the 7 months of March - September, 2015. Extrapolating from the Trustee's statements, it will take approximately 28 months to cure this arrearage (7 months x $503.18 = $3,522.26 ÷ $126.82 = 27.77 months). Thereafter, the $2,515.90 of pre-petition arrears are paid, which should take 20 months to do ($2,515.90 ÷ $126.82 = 19.83 months). After all mortgage defaults are cured, unsecured creditors will be paid 100%, which should take another 11 months ($1,350.52 ÷ $126.82 = 10.64 months). During all of the term of the Plan, the contractual payment of $503.18 is maintained and paid by the Trustee.[1]

After hearing arguments of counsel on April 14, 2015, July 9, 2015, and August 20, 2015, and after careful consideration of the pleadings, Schedules, Statement of Financial Affairs, and the proofs of claim, the Court issues this Opinion.

## Jurisdiction

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 157, 28 U.S.C. § 1334, and E.D. Mich. LR 83.50. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) (matters

---

[1] The Trustee's interpretation and application of the Plan language is correct. See Chapter 13 Plan, Part III D, Docket No. 6.

concerning the administration of the estate).

## Applicable Statutes

11 U.S.C. § 1322(b)(2), (3), and (5) state:

>   (b) Subject to subsections (a) and (c) of this section, the plan may –
>
>   . . .
>
>   (2) modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims;
>   (3) provide for the curing or waiving of any default;
>
>   . . .
>
>   (5) notwithstanding paragraph (2) of this subsection, provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due;

11 U.S.C. § 1326(b)(1) states:

>   (b) Before or at the time of each payment to creditors under the plan, there shall be paid –
>   (1) any unpaid claim of the kind specified in section 507(a)(2) of this title;

11 U.S.C. § 506(a)(2) states:

>   (a) The following expenses and claims have priority in the following order:
>
>   . . .
>
>   (2) Second, administrative expenses allowed under section 503(b) of this title, unsecured claims of any Federal reserve bank related to loans made through programs or facilities authorized under section 13(3) of the Federal Reserve Act (12 U.S.C. 343), and any fees and charges assessed against the estate under chapter 123 of title 28.

11 U.S.C. § 503(b)(2) states:

5

> (b) After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including –
>
> . . .
>
> > (2) compensation and reimbursement awarded under section 330(a) of this title;

11 U.S.C. § 330(a)(1)(A) and (B) state:

> (a)(1) After notice to the parties in interest and the United States Trustee and a hearing, and subject to sections 326, 328, and 329, the court may award to a trustee, a consumer privacy ombudsman appointed under section 332, an examiner, an ombudsman appointed under section 333, or a professional person employed under section 327 or 1103 –
> > (A) reasonable compensation for actual, necessary services rendered by the trustee, examiner, ombudsman, professional person, or attorney and by any paraprofessional person employed by any such person; and
> > (B) reimbursement for actual, necessary expenses.

Analysis

This case involves the interplay among numerous sections of the Bankruptcy Code that conflict and compliment each other. United Financial Credit Union argues that as a holder of a mortgage on the Debtor's principal residence, it is entitled to its regular monthly payments because 11 U.S.C. § 1322 prohibits modification of its rights. Further, United Financial Credit Union requests that it receive payment before the Debtor's attorney receives any payment, which is in contradiction to 11 U.S.C. § 1326. Neither United Financial Credit Union nor the Debtor yield to the other; both request the Court to enforce their respective statutory right without regard to other statutes.

For many years, perhaps decades, the Bankruptcy Court for the Eastern District of Michigan has harmonized these conflicting interpretations by also reading and applying 11 U.S.C. § 1322(b)(5). This subsection, which supersedes 11 U.S.C. § 1322(b)(2), allows a plan to provide for

the curing of any default within a reasonable period of time and the maintenance of payments while the case is pending. United Financial Credit Union requests this Court to either ignore this interpretation of the Code or overrule the implicit and tacit interpretation of the Code as evidenced by the confirmation of hundreds of Chapter 13 plans monthly and thousands yearly in this district.

This Court does not take that request lightly.

In a Chapter 13, a debtor or debtors file a petition and quite often are behind in their payments to their mortgage note holder. 11 U.S.C. § 1326 requires the debtor to commence making payments not later than 30 days after the filing of their plan. Unless the debtor's timing is impeccable, the debtor will undoubtedly be behind at least one payment before a payment is sent, much less received, by a Chapter 13 trustee.[2]

Although the instant case is a simple case in that there is only one mortgage note holder and one unsecured creditor, most Chapter 13 cases in this district involve one or two, possibly three mortgage note holders, a financial institution that holds a note secured by a debtor's vehicle for a debt incurred within 910 days of the debtor's petition, and other various creditors with different priorities ranging from tax claims to general unsecured claims. The Bankruptcy Code balances these interests and, more often than not, a Chapter 13 plan is confirmed by consent or with little argument. To accomplish this result, this district has historically read the quoted sections of the Bankruptcy Code to allow a debtor to cure the non-payment of the post-petition monthly payments, commonly called "gap" payments, by construing these payments as a default that is cured in a reasonable period

---

[2] 11 U.S.C. § 1326(a)(1) requires that debtors must commence making payments within thirty days of the order for relief. If debtors do not almost immediately start plan payments upon the commencement of the bankruptcy, they are automatically in post-petition default on secured claims.

7

of time, so long as the plan, once confirmed, provides for the maintenance of the payments thereafter. By focusing on the legal and practical effect of 11 U.S.C. §1322(b)(5), the mandate of 11 U.S.C. § 1322(b)(2) does not apply. For example, the Court will not confirm a Chapter 13 plan, over objection of a creditor, if the attorney fee is paid in full at the first disbursement by the trustee, but no monies are paid to a mortgage note holder. While the Court is aware that some plans are confirmed with this result, this event occurs by either agreement of the parties or by the failure of a creditor to object.

United Financial Credit Union argues that the Bankruptcy Court for the Western District of Michigan holds that 11 U.S.C. § 1322(b)(2) is superior to 11 U.S.C. § 1326(b)(1). *See, e.g., In re Rogers*, 500 B.R. 537 (Bankr. W.D. Mich. 2013); *In re Hammon*, 2015 WL 4462179 (Bankr. W.D. Mich. July 21, 2015); *In re Beall*, No. 13-09232, slip. op. (Bankr. W.D. Mich. Feb. 19, 2014). The Court does not believe that Section 1322(b)(2) trumps Section 1326(b)(1). The Court has carefully reviewed these opinions, but cannot find any detailed analysis of the effect of Section 1322(b)(5), in particular, addressing the interpretation of whether the gap payments can be cured. While this Court has the upmost respect for the Judges that author these opinions, it should be noted that either the historical interpretation of these statutes differs between the districts or the Judges have not had the arguments made that would support such a reading. Moreover, it is just as likely as not that more recent opinions seek to harmonize past practice in order to give practitioners continuity. If the latter is the case, then this Court likewise feels compelled to not break with the interpretation of other Judges in this district.

Before closing this issue, however, the Court has reviewed a number of sources to determine if there is any authority to support this district's reading of the statutes. In doing so, at least two

Circuit Courts of Appeal and a well known commentary interpret these statutes similarly. The following paragraphs best summarize this position:

> [2] . . . If the home mortgage is to be paid by the trustee, the money may begin flowing from the debtor to the trustee, but distributions to the mortgage holder will not begin until confirmation several months after filing. Either way, from the creditor's standpoint, the filing of the Chapter 13 case creates a postpetition default in payments.
>
> [3] . . . Many courts, including the U.S. Courts of Appeals for the Fifth and Eleventh Circuits, have held that § 1322(b)(3) and (b)(5) permit a Chapter 13 debtor to cure both postpetition and prepetition defaults through the plan. There is logic to this view because both § 1322(b)(3) and § 1322(b)(5) are worded that a Chapter 13 debtor can cure "*any* default." Neither section limits the power to cure defaults to prepetition defaults. A strong majority of courts have also concluded that a Chapter 13 debtor can modify a confirmed plan to cure defaults in payments to a home mortgage holder that arise after confirmation.

*Keith M. Lundin & William H. Brown, Chapter 13 Bankruptcy*, 4th ed., § 131.1, at ¶ 2-3, sec. rev. June 1, 2004.

In particular, *In re Hoggle*, 12 F.3d 1008 (11th Cir. 1994) and *In re Mendoza*, 111 F.3d 1264 (5th Cir. 1997) hold that post-petition defaults may be cured in a Chapter 13 plan and overruled objections by the mortgage holder, Green Tree Acceptance. As stated in *Hoggle*:

> Section 1322(b)(5) clearly states that a plan may provide for the curing of *any* default. Congress could have easily inserted the word prepetition to modify default but failed to do so. The omission is significant. The plain meaning of § 1322(b)(5) permits cure of any default whether occurring prior to the filing of the petition or subsequent to confirmation of the plan. Thus, § 1322(b)(5) would permit cure of postconfirmation defaults.
>
> . . .
>
> Green Tree's primary argument is in two steps. First, Green Tree argues that § 1329 permits modification of a plan only if the modification involves a provision which would have been permissible for an original plan under § 1322. The second step of the argument is that § 1322 would not permit in an original plan a provision for curing postconfirmation defaults, because an original plan logically could not provide for curing postconfirmation defaults. We reject Green Tree's argument. We

9

see no logical reason why an original plan could not provide for curing of postconfirmation defaults. For example, we see no reason why an original plan could not state that failure to pay on the default date in a mortgage – that payments be made on or before the first of the month – could be cured by payment within five days. Such a provision would seem to satisfy both requirements of § 1322(b)(5) – cure of the default within a reasonable time and maintenance of payments. Green Tree's contrary interpretation of the statutory scheme would result in a rigid default rule under which a payment tendered one day late would result in an immediate, incurable default. Such rigidity runs counter to Chapter 13's inherent flexibility and the Chapter's purpose to permit expanded use by homeowners. Thus, we reject Green Tree's argument that § 1329 erects a bar to curing postconfirmation defaults.

Green Tree also argues that such a provision in an original plan, permitting in effect an anticipatory modification to cure a postconfirmation default, would violate § 1322(b)(5)'s dual requirements that every cure be effected within a "reasonable time" and constitute a "maintenance of payments." This argument is misplaced. Only a crabbed reading of § 1322(b)(5) could suggest that a plan which permitted a cure within five days of default would fail to satisfy the statute's "reasonable time" requirement. Neither would such a provision violate § 1322(b)(5)'s mandate that there be a "maintenance of payments." Reading the statutory scheme to permit the cure of any defaults, even those occurring postconfirmation, falls within the letter and spirit of the statutory scheme, according the flexibility Congress intended for homeowners in proposing and modifying their Chapter 13 plans.

*Id*. at 1010-11.

The *Hoggle* Court based its decision in part on legislative history:

Legislative history accompanying § 1322(b)(5) specifies that a plan may "provide for the curing [of] any default" on long-term debt, such as mortgage debt. H.R.Rep. No. 95-595, 95th Cong. 1st Sess. 429 (1977). The Senate Report likewise states that under § 1322(b)(5), a Chapter 13 plan may cure "any default." S.Rep. No. 95-989, 95th Cong., 2d Sess. 141 (1978). With respect to § 1322(b)(3), an analogous section which provides generally for curing defaults, the legislative history unambiguously provides that a plan may provide for the curing or waiving of any default. H.R. Rep. No. 95-595, 95th Cong., 1st Sess. 429 (1977); S.Rep. No. 95-989, 95th Cong., 2d Sess. 141 (1978).

*Id*.

Likewise, the *Mendoza* Court stated:

Although we have not decided the question of whether a bankruptcy court may modify a confirmed plan of reorganization to include postpetition mortgage

10

payments in arrears, we note there is a split of authority as to whether a debtor may cure such defaults through modification. Though not controlling, we find the analysis of the Eleventh Circuit's decision in *In re Hoggle*, 12 F.3d 1008 (11th Cir. 1994) to be better reasoned and persuasive in holding that a Chapter 13 Plan may be modified to cure postpetition defaults through a plan of reorganization.

. . .

Conversely, however, several courts have held that § 1322(b)(5) precludes a debtor from modifying a Chapter 13 plan to include an arrearage. *See In re Nicholson*, 70 B.R. 398 (Bankr.D.Colo. 1987). In *Nicholson*, the bankruptcy court asserted that § 1322(b)(2) & (5) do not allow a Chapter 13 plan to modify the rights of a creditor holding a claim secured only by a mortgage on the debtor's principal residence except to cure *prepetition* defaults within a reasonable time." *Nicholson*, 70 B.R. at 401 (emphasis added). Although the *Nicholson* court states that § 1322(b)(2) & (5) expressly provide that only prepetition mortgages may be cured in a plan, we find that neither section distinguishes expressly or otherwise between prepetition and postpetition arrearages. Accordingly, we do not follow this constricted reasoning of § 1322(b)(2) & (5).

Thus, turning to the case *sub judice*, we are compelled to hold, as has our sister circuit, that pursuant to § 1322(b)(5), bankruptcy courts are empowered to modify a debtor's plan to include postpetition arrearages arising from a secured loan, such as a mortgage. Therefore, the bankruptcy court in this case erred as a matter of law by holding that it did not have the authority to modify Mendoza's Plan.

*Id*. at 1268.

To date, United Financial Credit Union has not offered any Sixth Circuit Court of Appeals case to support its position or, as persuasive authority, any Circuit Court case. United Financial Credit Union argues that some cases allow modification of a plan to cure post-petition arrears, but that these cases do not address confirmation of an original plan. If true, this is a distinction without a difference because any modified plan must meet the requirements of 11 U.S.C. §§ 1322 and 1325, as stated in 11 U.S.C. § 1329(b)(1):

Sections 1322(a), 1322(b), and 1323(c) of this title and the requirements of section 1325(a) of this title apply to any modification under subsection (a) of this section.

Second, the language of Section 1322 does not distinguish between original, amended, or modified plans. Third, as stated in *Hoggle,* both the statute and the legislative history compel a

11

reading to allow a cure of post-petition defaults.

United Financial Credit Union also argues that allowing a cure of post-petition default violates 11 U.S.C. § 1322(b)(2), which prohibits modification of the rights of a holder of a claim secured only by a security interest in real property that is the debtor's principal residence. This argument fails for two reasons. First, 11 U.S.C. § 1322(b)(5) controls over 1322 (b)(2) because of the "notwithstanding" language in 1322(b)(5). Second, at least four Circuit Courts of Appeals have held that the concept of "cure" is different than "modify."

> For example, as stated in *In re Litton*, 330 F.3d 636 (4th Cir. 2003):
>
> The bankruptcy courts have consistently interpreted the no-modification provision of § 1322(b)(2) to prohibit any fundamental alteration in a debtor's obligations, e.g., lowering monthly payments, converting a variable interest rate to a fixed interest rate, or extending the repayment term of a note. *See, e.g., In re Schum*, 112 B.R. 159, 161-62 (Bankr.N.D.Tex. 1990) (concluding that plan was impermissible modification because it proposed to reduce monthly payments and secured valuation). In *In re Gwinn*, 34 B.R. 936, 944-45 (Bankr.S.D.Ohio 1983), the court approved a plan as a permissible cure under § 1322(b)(5), because the plan did not propose to lower monthly payments, extend the repayment period, or make the obligation conditional. It instead sought only to reinstate the original contract with a minor delay in payment. *Id.; see also In re Cooper*, 98 B.R. 294 (Bankr.W.D.Mich. 1989) (finding impermissible modification where plan proposed new payment schedule).
>
> Along similar lines, another bankruptcy court concluded that confirmation of a Chapter 13 plan would have constituted an impermissible modification because the plan proposed to alter fundamental aspects of the debtor's obligations, i.e., the nature and rate of interest, and the maturity features of the loan. *In re Coffey*, 52 B.R. 54, 55 (Bankr.D.N.H. 1985). As these decisions have emphasized, § 1322(b)(2) prohibits modifications that would alter at least one fundamental aspect of a claim.
>
> Conversely, a "cure" merely reinstates a debt to its pre-default position, or it returns the debtor and creditor to their respective positions before the default. In *Landmark Financial Services v. Hall*, 918 F.2d 1150 (4th Cir. 1990), we had occasion to assess the meaning of the term "cure," as it is used in § 1322(b)(5). In that decision, Judge Hall determined that *"a cure reinstates the original pre-bankruptcy agreement of the parties ... [and] is not a modification of the [creditor's] rights. Cure by its very nature assumes a regimen where debtors reinstate default debt contracts in accordance with the conditions of their contracts." Id*. at 1154 (emphasis added and internal citations omitted).

12

. . .

> For example, the Second Circuit has observed that, "[c]uring a default commonly means taking care of the triggering event and returning to pre-default conditions." *DiPierro v. Taddeo*, 685 F.2d 24, 26-27 (2d Cir. 1982). The *DiPierro* court noted that "[w]e do not read 'curing defaults' under (b)(3) or 'curing defaults and maintaining payments' under (b)(5) to be modifications of claims." *Id*. at 27.
>
> The Seventh Circuit has given a similar meaning to the term "cure," as it is used in the Bankruptcy Code. It observed that "[t]he terms 'modify' and 'cure' are nowhere defined in the Bankruptcy Code. However, it is clear that Congress intended 'cure' to mean something different from 'modify.'" *In the Matter of Clark*, 738 F.2d 869, 871-72 (7th Cir. 1984). Significantly, the *Clark* court also observed that, "[o]rdinarily, the means by which one cures a default is by paying all amounts due and owing.... Thus, the plain meaning of 'cure,' as used in § 1322(b)(3) and (5), is to *remedy or rectify the default and restore matters to the status quo ante." Id.* at 872 (emphasis added); *see also In re Metz*, 820 F.2d 1495, 1497 (9th Cir. 1987) (interpreting "cure" provisions of Chapter 13 a permitting "the debtor to 'cure' (i.e., pay or bring current) arrearages on the debt and thereby reinstate the debt").
>
> . . .
>
> Rather, evaluated by its express terms, under the foregoing authorities, and by its proposed treatment of the 2000 Order, the Plan constitutes a "cure" under the Bankruptcy Code, in that it seeks to restore the "status quo ante." *Clark*, 738 F.2d at 872.

*Id*. at 643-45.

Taken as a whole, this Court finds ample authority to allow the confirmation of the Chapter 13 Plan in this case. Well reasoned and established case law exists to allow for the interpretation of the Bankruptcy Code provisions and implementation of those provisions as sought here. While acknowledging that some individual courts may differ from this district's approach, this Court is satisfied that a sound foundation exists to continue the existing procedure. Although the Court would prefer that debtors have more money to pay creditors faster and in greater amounts, tightly funded plans are sometimes necessary.

This Court cannot find a compelling reason to reverse the interpretations of the applicable statutes that have existed for decades in this District.

13

In this case, the Court concludes that the Trustee has sufficient monies on hand to pay the Debtor's attorney fees and make a regular payment of $503.18 per month commencing September, 2015. Thereafter, after payment of the Trustee fee, United Financial Credit Union will receive $503.18 on its regular monthly payment with the remainder disbursed by the Trustee to cure the defaults, which include both pre-petition and post-petition defaults in payments. Per the Court's calculations, these payments should be sufficient to cure all defaults within the mandatory 60-month period for the Chapter 13 Plan in this case, as well as pay 100% to unsecured creditors.

After reaching this conclusion, it is worth checking to see if the statutory mandates listed above are met. First, the attorney fees protected in Section 1326(b)(1) are paid either before or at the time a payment is made to a creditor. Second, regular monthly payments are maintained, both by the Debtor to the Trustee and then by the Trustee to United Financial Credit Union. Third, the mortgage arrears, both pre-petition and post-petition, are cured within a reasonable time. Fourth, the curing of these defaults is not an improper modification described in Section 1322(b)(2). While the Court concedes this interpretative framework may not be perfect, it does harmonize the discordant statutes, provide for payments to creditors, and grants debtors the opportunity to reorganize their financial affairs consistent with the Congressional directive and preference for Chapter 13.

The Objections of United Financial Credit Union are overruled. The Debtor's Chapter 13 Plan is confirmed. The Chapter 13 Trustee is directed to prepare an order consistent with this Opinion.

**For Publication**

`Signed on September 03, 2015`

14

15-20218-dob    Doc 25    Filed 09/03/15    Entered 09/03/15 09:13:12    Page 14 of 15

      /s/ Daniel S. Opperman      
**Daniel S. Opperman**
**United States Bankruptcy Judge**